UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO. 3:12-cr-68-RJC |
| v. | ) | |
| | ) | **GOVERNMENT'S FIRST** |
| **(1) JONATHAN D. DAVEY** | ) | **MOTION IN LIMINE** |
| **(4) MICHAEL J. MURPHY** | ) | |
| _____ | ) | |

NOW COMES the United States of America, by and through Anne M. Tompkins, and hereby moves, *in limine*, for an order precluding the defendants from attempting to introduce certain irrelevant, extraneous, and prejudicial evidence, or making argument thereon, during the trial of this case.

The Government makes this motion *in limine* in order to narrow the issues for trial, to exclude irrelevant, extraneous, or unduly prejudicial arguments or evidence, and to expedite this Court's determination of the legal disputes likely to arise during trial. "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Likewise, a defendant's proposed evidence should be excluded when it "would confuse the jury and misdirect the jury's focus from the issues properly before it." *United States v. Wellons*, 32 F.3d 117, 120 n.3 (4th Cir. 1994).

In the interest of judicial economy, and to facilitate this Court's resolution of legal and evidentiary disputes likely to arise at trial, the Government respectfully submits that the instant motion should be granted. Defendant Davey opposes each ruling requested by this motion. Defendant Murphy agrees only to the exclusion of argument and evidence about topics six (prosecutorial decisions) and eleven (religious beliefs/practices), contesting the remainder.

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

BACKGROUND ....................................................................................................... 1

STANDARD OF REVIEW ......................................................................................... 2

I.      The Court Should Preclude Reference to the CFTC ................................... 2

II.     The Court Should Bar Reference to this Court's Asset-Related Orders and
        Statements about Victims' Supposed Financial Incentive in the Outcome of the Trial ......... 4

III.    The Court Should Preclude Argument or Evidence about any Victims' Lack of
        Actual or Subjective Reliance on Misrepresentations .................................. 6

IV.     The Court Should Preclude Argument about any Victims' Lack of Diligence or
        Purported Negligence ................................................................................ 7

V.      The Court Should Exclude Evidence and Argument Relating to Simmons' and Other
        Conspirators' Convictions and Sentences ................................................. 10

VI.     The Court Should Preclude Argument about Governmental Decisions about Whom
        to Prosecute, and What Plea Agreements to Enter ................................... 11

VII.    The Court Should Preclude Evidence and Argument Regarding Specific Instances of
        Good or Lawful Conduct ........................................................................... 12

VIII.   The Court Should Preclude Evidence and Argument Regarding a "Following
        Orders" Defense ....................................................................................... 15

IX.     The Court Should Preclude Argument or Evidence about the Potential Consequences
        or Penalties upon Conviction ................................................................... 16

X.      The Court Should Preclude Argument or Evidence about the Potential Impact of
        Conviction on Defendants' Families ......................................................... 16

XI.     The Court Should Preclude Argument or Evidence about Defendants' Religious
        Beliefs or Practices .................................................................................. 17

XII.    The Court Should Preclude Any Defendant from Introducing His Own, or His Co-
        Conspirators Out of Court Statements ...................................................... 18

XIII.   The Court Should Preclude Defendants from Publishing or Otherwise Suggesting
        that Agent Interview Reports are the Statements of Witnesses ................. 19

XIV.    The Court Should Preclude Any Witness Other than the Defendant from Testifying
        about the Defendant's Mental State or Knowledge ................................... 21

CONCLUSION ....................................................................................................... 22

i

# BACKGROUND

Defendants are the final two Black Diamond conspirators who have not yet accepted responsibility for their Ponzi scheme that stole over $40,000,000 from over 400 victims. The scheme originator, Keith Simmons, was tried in December 2010, and sentenced by this Court to 50 years imprisonment in May 2012. Six other conspirators – Deanna Salazar, Bryan Coats, James Jordan, Stephen Lacy, Jeff Muyres, and Roy Scarboro – pled guilty between December 2010 and October 2011 for their roles in the conspiracy. Defendants were indicted along with co-conspirators Chad Sloat and Jeffrey Toft in February 2012. Sloat and Toft pled guilty in October-November 2012. This Court has peremptorily set this matter for trial in February 2013.

The evidence will show that Defendants Davey and Murphy each operated their own so-called "hedge fund" for the Black Diamond scheme. Defendant Davey also served as the "Administrator" and posed as an "independent accountant" for the hedge funds. The defendants defrauded victims in two main ways: (1) by claiming they had done due diligence on Black Diamond and operated legitimate hedge funds with significant safeguards, when such was not true; and (2) by forming their own Ponzi scheme as Black Diamond collapsed, collecting new victim money to fund their personal lifestyles and projects, as well as to make Ponzi payments to other victims. In the course of same, Davey also engaged in tax evasion. The presentation of the Government's case is expected to take approximately two weeks.

All of the issues are raised *in limine* for the Court because Davey informs the Government that he does not consent to any of the below issues raised, and Murphy consents only to the exclusion of arguments about prosecutorial discretion and religious beliefs.

Pre-trial rulings on the issues below will expedite the trial by making the presentation of evidence and argument more efficient, and by eliminating the need for argument or briefing on the below issues mid-trial.

1

## STANDARD OF REVIEW

"The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion." *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004). Likewise, "the decision to exclude evidence because of possible prejudicial effect rests in the sound discretion of the trial court." *United States v. Schnabel*, 939 F.2d 197, 202 (4th Cir. 1991). Similarly, "[t]he presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion." *Herring v. New York*, 422 U.S. 853, 862 (1975). "Since it [is] the court's responsibility to present [the law] to the jury in a clear manner, the court [will] not abuse its discretion by requiring the defense counsel to argue consistently with the correct law." *United States v. Wables*, 731 F.2d 440, 449 (7th Cir. 1984).

## ARGUMENT

### I.    The Court Should Preclude Reference to the CFTC

Defendant Davey has suggested in pre-indictment meetings a "blame the regulators" defense. Namely, Davey has suggested that the CFTC is to blame because it did not share information with him, and that it could have prevented some of the fraud if only the CFTC had moved faster, or otherwise acted differently. The Court should preclude reference to the CFTC and its investigation under Rules 402 and 403. Allowing the defendant to blame the CFTC and attempt to critique the actions of that separate civil governmental agency would create a distracting, confusing, and time-consuming mini-trial.

The CFTC's civil investigation has no relevance to this criminal case. Relevant evidence is defined by Federal Rule of Evidence 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

2

less probable than it would be without the evidence." Fed. R. Evid. 401. There is no element or affirmative defense that would be furthered by a detour to critique the CFTC. Certainly, it is not a defense to fraud to "blame the regulators." Accordingly, reference to the CFTC should be excluded under Rule 402.

Even assuming some marginal theory of relevancy could be articulated, reference to the CFTC should be excluded under Rule 403 as confusing, misleading, and a waste of time. Allowing reference to the CFTC would create a mini-trial about issues that do not bear on the ultimate question of guilt in this criminal case. *See Stallworth v. Sourcecorp*, No. 05-385, 2006 WL 2331093, *2 (M.D. Ala. Aug. 10, 2006) (unpublished) (granting defendant's motion to exclude SEC litigation on the grounds that even if marginally relevant, its probative value was outweighed by the potential for confusing and misleading the jury as well concerns about the waste of time involved in introducing and explaining the litigation). The defendants would be permitted to second-guess that civil agency with the jury as spectator, and the Government would be forced to rebut or put such speculation in context. This would be at best confusing to the jury, and would necessarily result in a massive waste of time.

For similar reasons, courts have frequently excluded under Rule 403 findings or proceedings in parallel agency matters. *Walker v. Nationsbank of Florida*, 53 F.3d 1548, 1552-3 (11th Cir. 1995) (approving exclusion of conflicting EEOC letter, noting that admitting the prior determination letters would force the jury to resolve the conflict between the determinations, shifting focus off the ultimate issue at trial); *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309-10 (8th Cir. 1984) (holding that "admission of the [EEOC] determination would have necessitated the taking of additional evidence to apprise the jury of the nature and extent of the EEOC investigation. To do so undoubtedly would have lengthened the trial. When the probative

value of evidence is minimal, a court may weigh the value of that evidence against the fact that to admit it would prolong the trial.") *RTC v. Scaletty*, 810 F. Supp. 1505, 1519 (D. Kan. 1992) ("[T] he defendants may not look to the conduct of . . . regulatory agencies. . . .  What [the defendants] cannot do is attempt to shift the focus of the trial onto the actions of federal regulatory agencies."); *RTC v. Greenwood*, 798 F. Supp. 1391, 1397 (D. Minn. 1992) ("The federal regulatory agencies have no duty to warn financial institutions of improprieties its examinations reveal in order to protect the institutions from losses."); *United States v. Pitt-DesMoines, Inc.*, No. 96-513, 1997 WL 525372, *1 (N.D. Ill. July 31, 1997) (excluding evidence of OSHA charges under Rule 403, holding that "[t]his mini-trial on the OSHA charges would certainly distract and confuse the jury from the main issues in this trial, and the danger of such confusion far outweighs any probative value that the OSHA charges may have in this case."); *E.E.O.C. v. Learonal*, Inc., 1994 WL 530711 (N.D. Ill. Sept. 29, 1994) ("admission of this evidence would lead to undue delay and confusion of the issues. . . .  The court declines to make the EEOC's cause and no-cause determinations the focus of this case.").  Reference to the CFTC should be barred under Rules 402 and 403.

II.     **The Court Should Bar Reference to this Court's Asset-Related Orders and Statements about Victims' Supposed Financial Incentive in the Outcome of the Trial**

        In tandem with blaming the CFTC, Defendant Davey has suggested to some victims that they would have received money back if not for the actions of the CFTC and the orders of this Court freezing assets in the CFTC's civil action.  Obviously, any attempt to blame the Court or the CFTC for the financial situation of Defendant Davey's victims would not be relevant or proper to the determination of Defendant Davey's guilt.  Accordingly, reference to this Court's financial orders, or the CFTC's request for such orders, should be barred under Rules 402 and 403 as well.

In addition, a victim-witness recently informed the Government that he had been told by a member of Defendant Davey's defense team that, if Davey was convicted, the victim would not see a penny of the money he invested. Counsel for the Government discussed this with Defendant Davey's counsel who replied that a questionnaire for witnesses had been prepared by someone that she would/could not name, and that Government witnesses likely had been asked words to the effect whether they were aware that they would receive less money back if Defendant Davey were convicted. Defense counsel for Defendant Davey stated that she would instruct that such a question would not be asked of further witnesses after the Government stated its position that such a question was improper and perhaps unethical.[1] The Government respectfully requests that this Court also rule *in limine* that the question and any argument or facts relating to it be barred because the question (1) is not designed to elicit relevant information and would not elicit relevant information; (2) improperly suggests to witnesses that they have a financial motive in the outcome of the trial and may attempt to influence their testimony; and (3) contains an incorrect assumption; while the questionnaire seems to speculate about the consequences of the CFTC's asset freeze order, that civil freeze order has nothing to do with and is entirely independent of this criminal action.[2]

---

[1] The Government made clear that Defense counsel was *not* under investigation in regard to such questions being asked of witnesses, and that it had no intent of reporting Defense counsel to the Bar, but that it believed it had an obligation to bring same to the attention of the Court.

[2] Indeed, it is absurd for Defendant Davey -- who stole and spent millions of victim money on himself and his mansion, often while victim withdrawal requests went unpaid – to suggest that he would somehow restore more to victims than this Court.

5

### III. The Court Should Preclude Argument or Evidence about any Victims' Lack of Actual or Subjective Reliance on Misrepresentations

Defendants have suggested in pretrial communications that some victims did not actually rely on the false statements in the written or verbal investment offerings, and therefore that the defendants are not guilty of fraud or, at least, their fraud is mitigated. Although their point is not entirely clear, Defendants presumably make this salvo in support of an argument that their false statements were not material because they were not relied upon.

Such argument, cross-examination, or evidence would mislead the jury because it confuses reliance with materiality. The Supreme Court has made clear that reliance by the victim is not an element of mail fraud. *Bridge v. Phoenix Bond and Indem. Co.*, 553 U.S. 639, 649 (2008). Likewise, the Fourth Circuit has been clear in the securities fraud context that whether a misrepresentation is "material" is determined by an objective test -- *not* a subjective test focused on a particular victim. *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 315 (4th Cir. 2004) (holding "[t]he question of materiality is an objective one, which examines the significance of an omitted or misrepresented fact to a reasonable investor."); *see Burns v. Duplin Land Dev., Inc.*, 621 F. Supp. 2d 292, 308 (E.D. N.C. 2009) ("[T]he materiality inquiry is objective and considers the reasonable purchaser -- not the actual purchaser."). The Government only must prove that the misrepresentations were objectively "relevant to the decision that the perpetrator of the fraud wants his intended victim to make." *United States v. Coffman*, 94 F.3d 330, 335 (7th Cir. 1996).

This is because the focus of the criminal statute is on the behavior and intent of the criminal *perpetrator*, *not* the victim. "Because the focus of the mail fraud statute, like any criminal statute, is on the violator, the purpose of the element of materiality is to ensure that a defendant actually intended to create a scheme to defraud." *United States v. Svete*, 556 F.3d

1157, 1165 (11th Cir. 2009); *see United States v. Swaim*, 757 F.2d 1530, 1535 (5th Cir.1985) ("A statement may be material even if it is ignored or never read by the agency receiving the misstatement."). Accordingly, it is not relevant whether any particular victim subjectively relied on the defendants' misrepresentations.

Thus, the Court should preclude the defendants from confusing or misleading the jury by arguing a lack of subjective reliance, or by, *e.g.*, asking victims the irrelevant question whether he or she relied upon particular misrepresentations in the written or verbal offering materials. It is not relevant to materiality whether the victims cared about the truth or falsity of the defendants' statements, whether the victims knew or should have known the statements were false, or whether the victims actually relied on the statements being true. Thus, the Court should prohibit the defendants from presenting evidence or argument on these issues. Indeed, even if the defendants could prove that the victims did not care, did not actually rely on, or actually disbelieved the defendants' false statements, those propositions would *not* make materiality more or less likely. *See United States v. Biesiadecki*, 993 F.2d 539, 544 (7th Cir. 1991) (affirming preclusion of testimony from customers who were not misled by defendant's statements; holding that the "excluded testimony of the other . . . customers would have improperly shifted the jury's attention away from the knowledge and intent of [the defendants] and focused instead on the beliefs of the victims of the alleged scheme to defraud.") Thus, evidence of such propositions would not be relevant. Because it would not be relevant, such evidence and argument would serve only to confuse or inflame the jury and should be precluded.

## IV. The Court Should Preclude Argument about any Victims' Lack of Diligence or Purported Negligence

Just as lack of reliance is no defense, it is even worse to "blame the victim" by suggesting that the victims were negligent or could have discovered the falsity of the defendants'

7

misrepresentations. Any negligence by the victims is irrelevant, and the Government respectfully requests that the Court preclude the defendants from presenting evidence, conducting cross-examination, or making argument suggesting that the victims were negligent or could have been more diligent in their dealings with the defendants.

The Fourth Circuit has been clear that "the victim's role in the offense is generally not relevant." *United States v. Terry*, 142 F.3d 702, 708 (4th Cir. 1998) (internal citation omitted). Accordingly, as other courts have recognized, "whatever role, if any, a victim's negligence plays as a bar to civil recovery, it makes little sense as a defense under a criminal statute that embraces '*any* scheme or artifice to defraud.'" *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) (emphasis in original). Put another way, "[t]he negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct." *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995).

Indeed, it is anathema to the criminal justice system to blame the victim for leaving his door unlocked. The same is true in the fraud context. Thus, the courts have recognized that a "blame the victim" defense that focuses on the victim's supposed failure to exercise due diligence is impermissible. For example, in *United States v. Serfling*, 504 F.3d 672 (7th Cir. 2007), the court held that "the perpetrator of a fraud may not defend himself by blaming the victim for being duped." *Id*. at 679. Similarly, the Second Circuit explained at length that the mail fraud statute must not be read as an invitation to criminals "to take advantage of the stupid or careless." *United States v. Thomas*, 377 F.3d 232, 242 (2d Cir. 2004); *see also Linden v. United States*, 254 F.2d 560, 567 (4th Cir. 1958) (holding that it was not a defense to a mail fraud charge that the victims had not "read the solicitation fully"). Again, "because the focus of the mail fraud statute, like any criminal statute, is on the violator, the purpose of the element of

8

materiality is to ensure that a defendant actually intended to create a scheme to defraud." *Svete*, 556 F.3d at 1165. Since the negligence of the victim is not a defense to a criminal fraud charge, the defendants should be precluded from referring to it at trial.

An illustrative case is *United States v. Falkowitz*, 214 F. Supp. 2d 365 (S.D. N.Y. 2000). In *Falkowitz*, the defendants were charged with mail fraud for orchestrating an insurance fraud scheme. The defendants sought to dismiss the indictment on the ground that they did not defraud the victims because the misrepresentations made "were apparent and related to matters that the insurance companies could easily confirm through readily available external sources and that, though having the affirmative obligation to investigate, the insurers chose not to." *Id.* at 374. The district court denied the motion, discussing at length the federal criminal fraud statutes, and stating plainly that the statutes "explicitly hinge on the existence of a scheme intended to defraud using mail or wire means to further the deceptive purpose." *Id.* (citations omitted). The statutes are intended to punish the scheme to defraud – "and do not require that the intended victim be intentionally defrauded, nor that any private injury or damage be proved." *Id.* (Emphasis added). Indeed, allowing such foray into the conduct of the victims would create a distracting side-show or mini-trial about the conduct of the victims.

> Shifting the emphasis . . . to whether the victim acted reasonably . . . necessarily invites a distracting evidentiary debate entailing inquiry into which of the targeted victims acted reasonably and which did not, and into the reasons why or why not. In that context, the accused would seek to introduce witnesses to testify that they were not deceived by the alleged fraudulent scheme, or that in fact they derived some promised benefit from it, as evidence that the alleged victims did not act with ordinary prudence and comprehension, or that defendants could not have intended to deceive.

*Id.* at 381 (S.D. N.Y. 2002). Further, even if the victim could have discovered the fraud, any failure to do so was immaterial to the scheme to defraud. *Id.* at 383. The financial predator being tried may not turn the tables to put his prey on trial. Accordingly, the Court should

9

preclude any attempted expedition into the conduct of the victims; such would be both irrelevant and an improper "blame the victim" argument.

## V.    The Court Should Exclude Evidence and Argument Relating to Simmons' and Other Conspirators' Convictions and Sentences

Some defendants will at least be tempted to argue to the jury that Simmons and others were the main perpetrators of this scheme, and that their convictions are sufficient to serve the ends of justice. However, the disposition of the cases against Simmons and others are not relevant. Even if relevant, such would greatly expand this trial into a trial regarding matters outside the scope of the indictment.

The defense should be precluded from offering evidence or making arguments related to the fact that Simmons and others were convicted or sentenced in connection with this case. For example, any argument that suggests it is not necessary to convict the defendants because Simmons was the primary culprit and already has been held accountable would be wholly improper and subvert the jury's sworn obligation and instructions -- to decide the guilt or innocence of each defendant before it (and only those defendants) dispassionately and based solely upon the evidence presented. It is axiomatic that the conclusion of other fact finders on issues that are also presented to the jury for determination in this case must not be admitted. *See United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993) ("In criminal cases, it is the province of defendant's jury to resolve questions of credibility; referring to what another jury may have done is clearly improper because the defendant's jury cannot permissibly rely on what they may assume a previous jury to have found."); *see also United States v. Wimbush*, 2006 WL 3055494 (4th Cir. 2006) (unpublished opinion holding that the district court did not abuse its discretion in granting the government's motion in *limine* to exclude evidence of a co-conspirator's acquittal on conspiracy charges).

10

## VI.    The Court Should Preclude Argument about Governmental Decisions about Whom to Prosecute, and What Plea Agreements to Enter

The United States moves this Court to exclude any evidence or argument regarding the propriety, wisdom or fairness of the government's decisions to offer and enter into plea agreements with the defendants' co-conspirators or not to charge others whom the defendants believe in fairness should have been charged. At trial, the United States anticipates that it will call certain witnesses who will testify pursuant to plea agreements, and others whom it has chosen not to prosecute at all. These witnesses will testify about their own actions and observations and about the defendants' participation in the charged conspiracy. The United States anticipates that the defendants may attempt to introduce evidence and/or argue to the jury that it was unfair or improper for the United States to have entered into the relevant plea agreements with these witnesses, or not to have prosecuted others. Likewise, the defendants may suggest that the jury find one or more of the defendants not guilty because other conspirators, who have chosen to plead guilty or cooperate, were more culpable. In doing so, the defendant would be asking the jury to acquit on grounds other than the facts and the law. Such evidence or argument is irrelevant to the issue of guilt or innocence and is outside the province of the jury.

It is well-settled that decisions of whether and how to prosecute and enter plea agreements are matters solely within the United States' broad discretion. *Wayte v. United States*, 470 U.S. 598, 607 (1985) ("In our criminal justice system, the Government retains broad discretion as to whom to prosecute.") (citation omitted). The propriety, wisdom or fairness of the United States' decisions in this regard are not proper matters for consideration by the jury and the Court should reject any attempt by the defendants to raise those issues at trial. *Cf. United States v. Trammel*, 583 F.2d 1166, 1168 (10th Cir. 1978) ("A defendant has no standing to contest the propriety of the grant of immunity to a witness.").

11

Therefore, the defendants have no right to argue to the jury the propriety of any prosecutorial decision. *See, e.g., United States v. Oberle*, 136 F.3d 1414, 1422-23 (10th Cir. 1998) (affirming trial court's instruction that the jury should not concern itself with the guilt of anyone other than the defendant). This issue was faced squarely by the Second Circuit in *United States v. Cheung Kin Ping*, 555 F.2d 1069, 1073-74 (2d Cir. 1977). In *Cheung*, defense counsel argued to the jury that it should consider the "public policy implications of the [g]overnment's favorable treatment of [the] cooperating witness" and by its verdict of not guilty could send a message to the government that it did not like the "deals" it had made with the cooperating witness. *Id*. at 1073. The *Cheung* Court approved the trial court's charge in which the court "instructed the jury that law enforcement policy was not its concern, and [the court] admonished the jury to focus its attention on the real issue, namely, whether the government had proved the facts alleged in the indictment beyond a reasonable doubt." *Id*. The court found that the charge was "well chosen, accurate and appropriate" since defense counsel had urged acquittal "on the basis of extraneous public policy considerations." *Id*. at 1073-74. The *Cheung* Court concluded, "[t]he trial court does indeed have the right to 'spear a red herring' . . . ." *Id*. at 1074. Accordingly, evidence and argument related to the fairness or wisdom of the government's prosecutorial decisions should be barred.

## VII. The Court Should Preclude Evidence and Argument Regarding Specific Instances of Good or Lawful Conduct

Defendant Davey has bragged to the Government about specific instances of purportedly admirable conduct that he has engaged in, and about his involvement with certain charities. It is well-established that specific instances of good or lawful conduct are not admissible in a criminal trial. *United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990) ("Proof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion

12

alleged in the indictment."); *United States v. Scarpa,* 897 F.2d 63, 70 (2nd Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions.") (citations omitted).

Criminal trials are not about the restraint or even good judgment the defendant may have shown in uncharged instances. *See United States v. Marrero,* 904 F.2d 251, 260 (5th Cir. 1990) ("The fact that [the defendant] did not overcharge in every instance in which she had an opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in the indictment."). Nor is a criminal trial about asking the jury to evaluate how the defendant has lived his life, nor to determine whether the defendant's good conduct outweighs the bad.

Rather, criminal trials are about whether the defendants engaged in the criminal conduct for which they are charged. *See United States v. Hill*, 40 F.3d 164, 168-69 (7th Cir. 1994) (holding that the fact that the defendant did not steal three "test letters" from the mail on other occasions was not admissible to prove or disprove his intent with regard to the stolen letters); *United States v. Camejo,* 929 F.2d 610, 613 (11th Cir. 1991) (drug defendant properly precluded from introducing evidence that he refused an opportunity to become involved in a different narcotics business); *United States v. Beverly*, 913 F.2d 337, 353 (7th Cir. 1990) ("[The defendant] undoubtedly could have called any number of additional witnesses to testify that they never had purchased cocaine from him. Such proof of an assertion by a negative is inadmissible."). Accordingly, evidence or argument about lawful or good conduct is improper.

Nor are good acts admissible as character evidence. The Fourth Circuit has been clear that "evidence of specific good acts is not admissible [under] Fed. R. Evid. 405." *United States v. Gravely*, 840 F.2d 1156 (4th Cir. 1988). The element of criminal intent does not put character in issue. *See United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (rejecting defendant's

13

argument that "one of the essential elements of the offense charged was his *mens rea* during the time he was alleged to have agreed to join this conspiracy," and holding that "[e]vidence of good conduct is not admissible to negate criminal intent."). A holding to the contrary would allow specific conduct character evidence in nearly every case. *United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997) (excluding the defendant's proffered character evidence in case of conspiracy to commit illegal exportation and holding that "if specific good deeds could be introduced to disprove knowledge or intention, which are elements of most crimes, the exception of Rule 405(b) would swallow the general rule of 405(a) that proof of specific acts is not allowed.").

Thus, the court in *United States v. Warner*, 396 F. Supp. 2d 924 (N.D. Ill. 2005), properly barred former Illinois Governor Ryan from submitting evidence of his legitimate work while in office, such as commuting death sentences. *United States v. Warner*, 396 F. Supp. 2d 924, 942 (N.D. Ill. 2005). The court rejected Ryan's argument that this evidence was necessary to show "what Ryan *did* in office: how Ryan spent his time, what issues had his attention, what was important to him." *Id*. at 941. As the court noted, "Ryan was no doubt conducting day-to-day, legitimate activities in his positions as Secretary of State and Governor of Illinois, but may also have engaged in fraudulent activities." *Id*. The court concluded that the evidence was properly excluded because, "Ryan's legitimate official acts, such as commuting death sentences, are not alleged to be part of the scheme or conspiracy to commit fraud. Nor are such decisions admissible extrinsic evidence of intent." *Id*. at 942. So, too, the defendants' professional or personal "legitimate activities," are not admissible extrinsic evidence of intent, and should be precluded.

14

## VIII. The Court Should Preclude Evidence and Argument Regarding a "Following Orders" Defense

The defendants have claimed in pretrial meetings that that in some respects – particularly with regard to the cash accounts – that their actions were directed by Simmons, Coats, or others, suggesting a "following orders" defense. This argument is legally prohibited and should be precluded from evidence or jury consideration. As noted, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).

The Fourth Circuit has noted that "it is clear that defendants could not assert as a defense to their criminal liability that they were only following [another's] orders; such a defense may at most be submitted in mitigation of punishment." *United States v. Harris*, 701 F.2d 1095, 1100 (4th Cir. 1983) (citing *McNamara v. Johnston*, 522 F.2d 1157, 1165 (7th Cir. 1975) ("[It]t is well established that an agent cannot be insulated from criminal liability by the fact that his principal authorized his conduct.")). Indeed, the Fourth Circuit has referred to such a defense as "facile." *United States v. Azeem*, Nos. 92-5319, 92-5320, 1993 WL 5902, at *5 (4th Cir. Jan. 14, 1993) (rejecting the defendant's "facile claim [that] he was the 'low man on the totem pole' simply following orders" and holding that "[e]ven if he was acting at the direction of others without thinking about the meaning of his actions, he, as the one who acted, remained responsible for his deeds.") (citing *United States v. North,* 910 F.2d 843, 880-881 (D.C. Cir. 1990) ("'[O]ur criminal justice system, one based on individual accountability and responsibility, has historically recoiled' from a 'following orders' or 'Nuremberg' defense."). Accordingly, the Court should preclude argument or evidence suggesting that any defendant was following orders.

15

## IX. The Court Should Preclude Argument or Evidence about the Potential Consequences or Penalties upon Conviction

The Court should preclude the defendants from introducing evidence, making an argument, or otherwise mentioning the potential penalties they face if convicted. The potential penalties faced by the defendants are irrelevant to the jury's determination of guilt or innocence. *See* Fed. R. Evid. 401; *Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should reach its verdict without regard to the sentence that might be imposed); *United States v. Shannon*, 981 F.2d 759, 761 (5th Cir. 1993) ("The well-established general principle is that a jury has no concern with the consequences of its verdict. . . . This Circuit has long recognized that punishment and sentencing are matters entrusted exclusively to the trial judge.") (quotation omitted). While the law prohibiting such references to potential penalties is especially clear, the Government respectfully requests that the Court be vigilant to questions of government witnesses designed to elicit answers, which would properly bear upon their credibility, about the potential punishment maximums the witnesses face or have faced. These answers should not be used as a basis for argument to the jury that it should consider those potential punishments when determining the guilt or innocence of the defendants.

## X. The Court Should Preclude Argument or Evidence about the Potential Impact of Conviction on Defendants' Families

No defendant should be permitted to draw attention to his family, including his family's need for support, either financial or emotional, nor the effect of a conviction upon his family. This kind of information is irrelevant and amounts to nothing more than an appeal to the sympathy of the jury. *See, e.g., United States v. Ramirez,* 482 F.2d 807, 816 (2d Cir. 1973); *United States v. D'Arco*, 1991 WL 264504 at *4 (N.D. Ill. 1991) (holding that "no testimony or argument will be allowed regarding the impact of the trial or possible conviction upon a family member"); *United States v. Shields*, 1991 WL 236492 at *4 (N.D. Ill. 1991) (granting motion *in*

16

*limine* precluding "any testimony regarding the possible impact which a conviction might have upon any family member"). Personal or familial consequences of trial or conviction should play no part in the jury's deliberations on whether or not defendant is guilty of the crimes charged in the indictment. Accordingly, the Court should allow the motion *in limine* on this issue.

## XI. The Court Should Preclude Argument or Evidence about Defendants' Religious Beliefs or Practices

In pretrial discussions, Defendant Davey in particular has suggested the view that he could not have committed the crimes in question because he is a religious man, and is active in his church. Defendant's religiosity has no bearing on Defendant's guilt or innocence, and arguments or evidence about same should be excluded. *Cf. United States v. Prince-Oyibo*, 320 F.3d 494, 501-2 (4th Cir. 2003) (affirming exclusion of evidence of Defendant's religious persecution as irrelevant to document fraud charge).

Such evidence would not be admissible to improve Defendant's credibility should he choose to testify. *See* Fed. R. Evid. 610 ("Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is . . . enhanced."). Such evidence would be improperly prejudicial. *United States v. Sampol*, 636 F.2d 621, 666 (D.C. Cir. 1980) ("The purpose of [Rule 610] is to guard against the prejudice which may result from disclosure of a witness's faith."). Nor, of course, would Defendant's religiosity be admissible to show Defendant's character or conformity therewith. *See* Fed. R. Evid. 405(a).

The only possible purpose for such evidence would be a misguided attempt to arouse jury sympathy, or to distract the jury from the question of guilt. *See United States v. Perez-Oliveros*, 479 F.3d. 779, 783 (11th Cir. 2007) (approving rejection of the defendant's motion to admit religious items found by law enforcement in his wallet); *United States v. Bernard*, 299 F.3d 467,

476 (5th Cir. 2002) (approving of court's sentencing instruction that jurors should not "consider the religious views of the defendants"); *Virgin Islands v. Petersen*, 553 F.2d 324, 329 (3d Cir. 1977) (approving denial of attempt to put into evidence religion of alibi witness).  Accordingly, the Court should preclude argument or evidence of the defendants' religious beliefs or practices.

## XII.  The Court Should Preclude Any Defendant from Introducing His Own, or His Co-Conspirators Out of Court Statements

The defendants should not be permitted to introduce their own out-of-court statements or the out-of-court statements of their co-conspirators.  It is well-established in the Fourth Circuit that such statements are hearsay pursuant to Rule 801, and are not "admissions by a party opponent" pursuant to Rule 801(d)(2) when offered by a party himself, rather than the party's "opponent."  *United States. v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) ("[T]he rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party."); *United States v. Lentz*, 524 F.3d 501, 526 (4th Cir. 2008) (affirming district court's refusal to allow into evidence various self-serving exculpatory statements made by the defendant).  Other Circuits are in accord.  *E.g. United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) ("Rule 801(d)(2), however, does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses. Indeed, if such statements were deemed admissible under Rule 801(d)(2), parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury.") (internal citation omitted). Accordingly, the Court should preclude any defense witness from testifying as to any defendant or co-conspirators' out-of-court statements.

18

**XIII.  The Court Should Preclude Defendants from Publishing or Otherwise Suggesting that Agent Interview Reports are the Statements of Witnesses**

The Government respectfully asks the Court to preclude the defense from introducing the contents of agent interview summaries to impeach witnesses during cross examination, publishing the contents of the interview summaries, or otherwise suggesting to the jury that the interview summaries are statements of the witnesses who did not write them or adopt them.

Agent interview summaries or 302s are not statements of the witness under the Jencks Act, 18 U.S.C. § 3500(e).  In *Palermo v. United States*, 360 U.S. 343 (1959), the Supreme Court held that because the Jencks Act is meant to restrict the defendant's use of discoverable statements to impeachment, *id*. at 349, "only those statements which could properly be called the witness' own words should be made available to the defense."  *Id*. at 352.  The Court went on to elaborate that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced."  *Id*. at 352-53.  Thus, unless the witnesses have reviewed and adopted the interview summaries -- which was not the practice here -- the interview summaries are not statements of the witness.  Moreover, because the interview summaries are written after interviews are completed and reflect the thought processes and interpretations of the agent, they do not constitute a contemporary and substantially verbatim recital of the witness's statement under subsection (e)(2).  The Fourth Circuit has clearly held as much.  *United States v. Roseboro*, 87 F.3d 642, 646 (4th Cir. 1996) ("[T]he district court's finding that the FBI 302 Report was not a Jencks Act statement is not clearly erroneous.").  Every circuit court to address the question has agreed.[3]

---

[3] *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008); *United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996);

19

Accordingly, the defense should be precluded from introducing the contents of the interview summaries to impeach witnesses on the basis of inconsistent statements because the interview summaries are not the statements of the witnesses themselves.  Moreover, they must be precluded from publishing the contents of the interview summaries to the jury, or otherwise suggesting to the jury that an interview summary is a statement of the witness.  As the Supreme Court noted in *Palermo*, it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations."  360 U.S. at 350.

The defense, of course, is free to ask a witness whether he or she made a statement that is reflected in an interview summary.  However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the contents of the interview summaries as a prior inconsistent statement.  *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "such documents [FBI 302s] have been deemed inadmissible for impeaching witnesses on cross-examination"); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement").  Moreover, the defense may not use the interview summaries in a way that suggests to the jury that an interview summary is a statement of the witness.  *See United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from a 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to

---

*United States v. Farley*, 2 F.3d 645, 654-55 (6th Cir. 1993); *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993); *United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989); *United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985).

require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the federal rules of evidence). The motion should be allowed.

## XIV. The Court Should Preclude Any Witness Other than the Defendant from Testifying about the Defendant's Mental State or Knowledge

No witness other than the defendants should be permitted to testify about the defendants' mental states. It is obvious that Rule 704 prevents any defense expert from testifying about a defendant's mental state. It would likewise be inappropriate for any lay witness to give an opinion in the form of testimony about any defendant's' mental state, especially that any defendant did not have fraudulent intent. Any such testimony would have to be both based on personal knowledge pursuant to Rule 602 and helpful pursuant to Rule 701. As the Court of Appeals for the Third Circuit has explained, lay witnesses almost never have helpful personal knowledge of the inner workings of another person's mind.

> While we have never held that lay opinion evidence concerning the knowledge of a third party is *per se* inadmissible, we have certainly made this kind of evidence difficult to admit. If the witness fails to describe the opinion's basis, in the form of descriptions of specific incidents, the opinion testimony will be rejected on the ground that it is not based on the witness's perceptions. To the extent the witness describes the basis of his or her opinion, that testimony will be rejected on the ground that it is not helpful because the fact finder is able to reach his or her own conclusion, making the opinion testimony irrelevant.

*United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003); *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) ("When the issue is a party's knowledge, which is perhaps a more easily fathomed state of mind than, for example, intent or motivation, we suspect that in most instances a proffered lay opinion will not meet the requirements of Rule 701."). Put differently, witnesses who are not mind-readers cannot have personal knowledge of a defendant's mental state. And, to the extent some fact observed by the witness may be relevant to a defendant's mental state, the witness may testify directly as to that fact and allow "the fact finder . . . to reach

his or her own conclusion," 336 F.3d at 242, about the relevant defendant's mental state. Any deduced opinion by the witness as to a defendant's mental state is irrelevant under Rule 701.

The general prohibition against lay opinion testimony as to a defendant's state of mind is especially applicable in a case like this one. There will be no dispute that a fraud occurred, nor that the defendants submitted false statements in support of the fraud. The only point of true dispute must be that the defendants lacked fraudulent intent. Similarly, in *United States v. Fowler*, 932 F.2d 306 (4th Cir. 1991), the Fourth Circuit held that it was proper to exclude documents suggesting that the rules governing the defendant's conduct were "highly complex, confusing, unclear, and occasionally misunderstood," because, in part, "[t]he confusion and corruption of others had no tendency to prove whether [the defendant's] was confused or corrupt. For this reason the reports did not satisfy the definition of relevancy in Rule 401." *Id*. at 314. Likewise, in *United States v. Hauert*, 40 F.3d 197 (7th Cir. 1994), the Seventh Circuit held that the district court properly excluded a witness's testimony as not based on personal knowledge and not helpful when offered "to show [defendant's] knowledge, or lack thereof . . . ." *Id*. at 201 ("opinion testimony on a party's knowledge of the law in most instances . . . will not meet the requirements of Rule 701.") (quotation omitted). The witness could not testify as to the "defendant's subjective sincerity, motivation, knowledge, or state of mind." *Id*. Here, the only witnesses who should be permitted to testify as to whether any particular defendant had the relevant fraudulent intent are the defendants themselves.

## CONCLUSION

Accordingly, for the reasons set forth above, the Government respectfully requests that the Court preclude evidence or argument regarding: (1) the CFTC; (2) this Court's asset-related orders and CFTC requests for same (3) any victim's lack of actual or subjective reliance on

misrepresentations; (4) any victim's lack of diligence or purported negligence; (5) Simmons' and other conspirators' convictions and sentences; (6) governmental decisions about whom to prosecute, and what plea agreements to enter; (7) specific instances of good or lawful conduct; (8) a "following orders" defense"; (9) the potential consequences or penalties upon conviction; (10) the potential impact of conviction upon the defendant's families; (11) the defendants' religious beliefs or practices; (12) the defendants' or their conspirators out-of-court statements; (13) witnesses other than the defendant from testifying about the defendants' mental states or knowledge; and (14) to appropriately limit the use of 302s.

RESPECTFULLY SUBMITTED this 14th day of January, 2013.

ANNE M. TOMPKINS
UNITED STATES ATTORNEY

**s/ Kurt W. Meyers**
DC Bar Number: 490500
**s/ Mark Odulio**
MD Bar Number
Assistant United States Attorneys
United States Attorney's Office
227 West Trade Street, Suite 1700
Charlotte, North Carolina 28202
Telephone: 704.344.6222
Fax: 704.344.6629
E-mail: Kurt.Meyers@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on this 14th day of January 2013, the foregoing document was served upon the defendants via ECF filing to their respective counsel.

                                       **s/ Kurt W. Meyers**

24